UNITED STATES, Appellee

v.

GEORGE A. THOMPSON, Private E-1, U. S. Army, Appellant

3 USCMA 620, 14 CMR 38

No. 2720

Decided January 8, 1954

LT COL James C. Hamilton, U. S. Army, and 1ST LT Jack W. Tucker, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1st LT Joseph C. Chandler, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by a general court-martial of five separate offenses. The only one of relevancy to this decision is his conviction of unlawfully carrying a concealed weapon in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. We granted his petition for review to determine the sufficiency of the evidence to support the finding of guilt as to that offense.

On October 6, 1952, the accused was apprehended in the Greyhound Bus Depot, El Paso, Texas, by an official of the United States Immigration Service.

This official was acting on the basis of information received from an employee of the Depot. When apprehended, the accused was attired in civilian clothes and he was carrying a loaded .32 caliber revolver under his coat.

The first question to be resolved is whether carrying a concealed weapon is a military offense. Constitutional considerations are not controlling with respect to such conduct even though the Second Amendment to the Constitution provides "the right of the people to keep and bear arms, shall not be infringed." If applicable, that Amendment merely serves to prevent infringement by the Federal Government of the right there defined. Observed in its historical context, that enactment was designed to encourage and strengthen the Militia, a force which the States were expected to maintain, as opposed to a standing force of troops which was forbidden to them. Ordinarily, it was expected that when called to serve their country, members of the Militia would provide their own arms and ammunition and so to interfere with their use or possession would be inconsistent. See "The American Colonies In The 17th Century," Osgood, Vol 1, Chap XIII 1 Cooley, Constitutional Limitations, 8th ed, 1927, page 729.

The Constitutions of most of the States have embodied a provision similar to the Second Amendment. However, it has never been contended successfully that the right to bear arms is unfettered. Presently it is generally conceded that carrying ▌ weapons is subject to the police power of the state, and thus may be controlled by legitimate regulation. In the exercise of that power, a good many jurisdictions have seen fit to prohibit generally the carrying of concealed weapons. See cases collected in Strickland v. State, 137 Ga 1, 72 SE 260, 36 LRA (NS) 115 (1911); and annotation LRA 1917C 63.

In United States v. Miller, 307 US 174, 178, 83 L ed 1206, 59 S Ct 816 (1939), it was said that Congress could constitutionally forbid the pos-

session of any dangerous weapon which had no "reasonable relationship to the preservation or efficiency of a well regulated militia." But the rule there stated, while adequate to dispose of that case, was soon outmoded by World War II. In that conflict it was promptly demonstrated that very nearly every modern lethal weapon had some sort of military use. Accordingly, in Cases v. United States, 131 F2d 916, 922–923 (CA 1st Cir) (1942), cert den 319 US 770, 87 L ed 1718, 63 S Ct 1431, changing conditions were acknowledged and the rule was modified to provide that Congress could limit the keeping and bearing of firearms by an individual when the proscription was aimed at weapons to be used on personalized frolics of the possessor. If there is good reason to so circumscribe civilians there is like reason to limit military personnel. It is difficult to conjure up a justifiable reason why a member of the armed services should be exempted from reasonable control and the civilian supervised closely. Particularly is that true when the weapon is not required to be concealed at the time by the exigencies of the military service or by the duties of a person's assignment.

The offense of carrying a concealed weapon is not discussed in the present Manual, but it is listed in ▌ the Table of Maximum Punishments under Article 134, and a model specification is provided. Manual for Courts-Martial, United States, 1951, paragraph 127c, page 227; App 6c, page 495. Article 134 of the Code denounces as offenses: (1) all disorders and neglects to the prejudice of good order and discipline in the armed forces, (2) all conduct of a nature to bring discredit upon the armed forces, and (3) all crimes and offenses not capital, of which persons subject to the Code may be guilty.

It is important to note that we are not here concerned with a question of the applicability of local law to members of the military. Counsel for accused may be assured that the law of the State of Texas is not considered by us in reaching our conclusion. The Manual for Courts-Martial, United

States, 1951, paragraph 213c, page 383, expressly provides:

"State and foreign laws are not included within the crimes and offenses not capital referred to in Article 134 and violations thereof may not be prosecuted as such except insofar as State law becomes Federal law of local application under Title 18 U. S. C. § 13. On the other hand, an act which is a violation of a State law or a foreign law may constitute a disorder or neglect to the prejudice of good order and discipline or conduct of a nature to bring discredit upon the armed forces and so be punishable under the first or second clause of Article 134."

There was no allegation as to the Texas law, the Government did not attempt to prove or rely on that theory, and we, therefore, eliminate it from consideration. We eliminate also from this decision any discussion as to whether the crime might be an offense under the first subdivision of Article 134, for we are convinced that the facts present here establish, beyond a reasonable doubt, that accused was guilty of "conduct of a nature to bring discredit upon the armed forces." It is true that ordinarily the bearing of arms by a member of the armed forces is a common incident of the service. In a real sense, the open and public display of the weapons of war has long been considered a proud and honorable badge of the service. But the same rationale can be applied to the civilian population. The open carrying of a weapon by a hunter is assuredly not a badge of dishonor. On the other side of the ledger, in both civilian and military circles, hidden lethal weapons are the tools of the men who deal in crimes of violence. The potentialities for harm to the public are the same whether the individual so armed is in or out of the service. To say that the secretive and surreptitious carrying of a dangerous weapon by those in the service in such a manner as to hide it from public view should be considered honorable is to ignore stark reality. One need not hide his medals. If in the open display of the weapon under normal circumstances we have a hallmark of honor, in its concealment we have an act which usually hides a purpose to commit a heinous offense. For the foregoing reasons, and in view of widespread local legislation, the provisions of the present Manual, the lack of any real necessity for carrying a weapon concealed, the reduction in opportunities to commit crimes of violence when weapons are not present, the manner in which the rights of the individual are trampled on by one armed with a gun, and the knowledge of the means by which murders and robberies are accomplished, we have no hesitancy in concluding that the carrying of a concealed weapon is an offense which offends against the second subdivision of Article 134. If large numbers of servicemen were roaming the streets armed with concealed weapons, the civilian population would justly fear, regard with suspicion, and distrust them. If it were to become known that the military services did not consider stealth and furtiveness when they were coupled with the capabilities of hand weapons as being inimical to public welfare, there would be an impact on society which would reflect severely on the whole military system. Too often, in the past, have the weapons been used for sinister purposes and for the military to relax its vigilance would make it easier for those who live by violence to prosper. A limitation is not unconstitutional merely because it prohibits. Furthermore, there is no unnecessary curtailment of a substantial right in demanding that a person who is in possession of a dangerous weapon notify others by an open display of his armament that he is so armed.

Of more difficulty is the question of the elements of, and the proof necessary to make out, the offense charged. The accused concedes that the carrying of a concealed weapon may be, under some circumstances, a violation of Article 134 of the Uniform Code. He limits his concession to such concealment as is forbidden by a general military regulation, or where the weapon is carried with an intent to use it in furtherance of an unlawful act. Based on his concession, he argues that the evidence is insufficient to satisfy either arm.

**623**

We believe that when evidence is available, a contemplated unlawful use should be established. However, that is not always possible and failure to prove an evil, intent at the time of apprehension does not leave the offense unproven. The vice of carrying the weapon is that the intent to use it unlawfully may be formed at any time. When the urge to kill, rob, or steal is formed, the weapon is handy. Making the concealed possession a crime is for preventative purposes. For that reason, all that is needed to ■ establish the offense is to prove that the accused concealed a weapon on or about his person; that the weapon was in fact dangerous; and that the conduct would bring discredit on the military service. Here the prosecution estab- ■ lished concealment and the ■ weapon was shown to have been a loaded revolver. This left only the proof of discredit on the military service and we have already concluded that was established. Of course it is possible to contend that, under certain circumstances, a member of the military may have specific authorization to carry a concealed weapon. A particular assignment in a narrow field might require that certain servicemen travel incognito. A vivid imagination could perhaps create a hypothetical situation where the type of concealment under examination would be recognized as necessary. But if unusual assignments place an accused in an excepted class, we believe it just and proper for him to make an issue of that status and move forward with some type of showing. "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts particularly within their knowledge and hidden from discovery by the Government." Casey v. United States, 276 US 413, 418, 48 S Ct 373, 374, 72 L ed 632 (1928), quoted as applicable in Cases v. United States, supra. In United States v. Gohagen, 2 USCMA 175, 7 CMR 51, 52, we quoted from Morrison v. California, 291 US 82, 88–91, 54 S Ct 281, 78 L ed 664, 669–670 (1934), and the language is appropriate here:

**624**

". . . The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowedge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. . . .

". . . For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance . . . or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception. . . . The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One can do no more than adumbrate them; sharper definition must await the specific case as it arises."

Applying the language of the Morrison case to this case, we believe that possession of a concealed weapon may be considered inculpatory and of "sinister significance." It would have been a simpler matter for the accused to have raised an issue that his possession of the revolver was authorized or otherwise lawful, and, therefore, could not be characterized as illegal, if such was the case. Having made no attempt to do so, we perceive no unfairness or injustice in a view which holds him ac-

countable for his possession. United States v. Gohagen, supra. It necessarily follows that in our view the evidence is sufficient to make out the offense charged.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

Chief Judge QUINN concurs in the result.