**UNITED STATES**

v.

**Michael D. POWELL, 535 78 3642 Airman (E-3), U.S. Navy.**

**NMCM 85 4359.**

U.S. Navy-Marine Corps Court of Military Review.

30 June 1986.

LCDR Alvin L. McDonald, JAGC, USN, Appellate Defense Counsel.

LT Roman A. Chojnacki, JAGC, USNR, Appellate Defense Counsel.

LT Larry D'Orazio, JAGC, USNR, Appellate Government Counsel

Before JOHN W. KERCHEVAL II, Senior Judge, and MICHAEL D. RAPP and JOHN E. GRANT, JR., JJ.

RAPP, Judge:

The appellant, pursuant to his pleas, was convicted by a special court-martial (military judge alone) of possessing drug paraphernalia (a pen pipe) in violation of a Secretary of the Navy Instruction, of possessing a dangerous weapon (a "survival knife") in violation of Article 1136, U.S. Navy Regulations, and of possessing ½ gram of marijuana. He was sentenced to a bad-conduct discharge, confinement for 51 days, forfeiture of $350.00 pay per month for two months and reduction to pay grade E–1. Initially the case came before this Court for review without specific assignment of error, but we ordered briefs on the issue:

Whether appellant's guilty plea to Specification 1 under Charge I was provident where appellant pled guilty to possession of a knife, and whether that particular knife under the circumstances was a "dangerous weapon" as contemplated by U.S. Navy Regulations.

During the military judge's providency inquiry the appellant explained that the knife in question

was a survival knife ... the back came off. There was [sic] fishing supplies inside the handle, the top had a compass on it. Your basic survival knife.

The blade was "approximately four inches." The knife was in a sheath and was stuck between the driver's seat and the console. The appellant conceded that he had no permission from military authorities to possess the knife and that it was not necessary for the proper performance of his military duties. For purposes of clarification the military judge explained that:

A weapon is dangerous if, one, it was specifically designed for the purpose of doing grievous bodily harm or, two, was used or intended to be used by you to do grievous bodily harm.

The appellant stated that he had not used the knife to do grievous bodily harm to anyone and did not intend to use it for that purpose but conceded that it could be used to do grievous bodily harm and that it was, therefore, a "dangerous weapon," even though "it was more for the outdoors type when you stay up in the wilderness."

The appellant was specifically charged with violating Article 1136, U.S. Navy Regulations, which states:

1136. Possession of Weapons.

Except as may be necessary to the proper performance of his duty or as may be authorized by proper authority, no person in the naval service shall:

. . . . .

b. Have in his possession any dangerous weapon, instrument, or device or any highly explosive article or compound on board any ship, craft, aircraft, or in any vehicle of the naval service or within any base, or other place under naval jurisdiction.

A "dangerous weapon" is not defined within Navy Regulations. The definition used by the military judge actually emanates from paragraph 112, Part IV, *Manual for Courts-Martial, United States, 1984*, which only pertains to carrying a concealed weapon in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. Although that definition is preceded by the caveat, "For purposes of this paragraph," we nevertheless perceive neither legal nor logical reason why it should not apply to the separate offense of possessing a dangerous weapon in violation of a lawful general regulation under Article 92, UCMJ, 10 U.S.C. § 892, under the circumstances of this case. This definition is necessarily flexible in recognition that whether a particular object is a dangerous weapon is often a question of fact. *United States v. Bluel,* 10 U.S.C. M.A. 67, 27 C.M.R. 141 (1958).

In expressing the rationale for prohibition of *concealed* weapons the Court of Military Appeals has stated:

The vice of carrying the weapon is that the intent to use it unlawfully may be formed at any time. When the urge to kill, rob, or steal is formed, the weapon is handy. Making the concealed possession a crime is for preventative purposes.

*United States v. Thompson,* 3 U.S.C.M.A. 620, 14 C.M.R. 38, 42 (1954). That rationale applies with equal force to the unauthorized *possession* of dangerous weapons under the circumstances of this case. Further, no matter how many innocent uses an instrument may lend itself to, if that instrument has the innate capacity for inflicting grievous bodily harm and is primarily designed to inflict bodily harm, it is a dangerous weapon and prohibition of its unauthorized possession is justified. The military judge recognized this in his example for the appellant involving a pistol; i.e., the pistol may be purchased for target practice, but its potential for harm and primary design would make it a "dangerous weapon."

Where it may not be readily apparent whether an instrument is designed primarily for inflicting grievous bodily harm (i.e., because of competing potential legitimate uses), the "surrounding circumstances" may clarify its "character as a dangerous but innocent instrument, or as a weapon." *Bluel,* 27 C.M.R. at 142. For example, in *Bluel* the Court of Military Appeals pointed out the equivocal nature of a straight razor, contrasting its open and innocent possession incident to grooming with its illicit concealment on the person under circumstances inconsistent with any legitimate purpose. Turning to this case for corresponding illustrative (but not exclusive) hypotheses, had the knife in question been found alone or along with fishing tackle or camping gear in the trunk of the car, or on his person during a fishing or camping trip, these circumstances coupled with the appellant's explanation would have tied in with the wilderness survival features of the knife (compass, fishing equipment, waterproof matches) and might have led us to conclude that the knife was a "dangerous but innocent instrument," rather than a weapon. A similar result was possible if the knife had been in a tool box in the trunk. The knife was actually located between the driver's seat and center console of the car, however, so that we can determine, in the absence of circumstances establishing an immediate over-

riding legitimate purpose, it was within the appellant's easy reach for use as a weapon consistent with its innately dangerous capacity and design to inflict grievous bodily harm. We therefore conclude, under the circumstances, that the survival knife with a four-inch blade possessed by the appellant was a dangerous weapon within the terms of Article 1136, U.S. Navy Regulations, and that his guilty plea was provident, notwithstanding the appellant's denial that he intended to use that knife as a dangerous weapon.

Accordingly, we affirm the findings and sentence as approved on review below.

Judge GRANT concurs.

Senior Judge KERCHEVAL (Absent/Concurs).