UNITED STATES, Appellee,

v.

**Wesley S. GRIMM, Lance Corporal, U.S. Marine Corps, Appellant.**

No. 98–0975.

Crim.App. No. 97–1691.

U.S. Court of Appeals for the Armed Forces.

Argued April 8, 1999.

Decided Aug. 12, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Lieutenant Michael A. Castelli,* JAGC, USNR (argued); *Lieutenant Commander R.C. Klant,* JAGC, USN (on brief).

For Appellee: *Lieutenant Timothy E. Curley,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Lieutenant Russell J.E. Verby,* JAGC, USNR.

Judge SULLIVAN delivered the opinion of the Court.

On January 30, 1997, appellant was tried by a special court-martial composed of a military judge sitting alone at Marine Corps Air Station El Toro, Santa Ana, California. Consistent with his pleas, he was found guilty of numerous offenses, including carrying a concealed weapon in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement for 150 days, forfeiture of $600 pay per month for 5 months, and reduction to E–1. On July 15, 1997, the convening authority disapproved the finding as to part of one specification but approved the sentence as adjudged. The Court of Criminal Appeals affirmed in a memorandum opinion dated June 9, 1998.

This Court, on December 17, 1998, granted review on the following question of law:

WHETHER THE MILITARY JUDGE ERRED BY FINDING APPELLANT GUILTY OF SPECIFICATION 3 OF CHARGE IV (UNLAWFUL CARRYING OF CONCEALED WEAPON) BECAUSE APPELLANT'S ANSWERS IN THE PROVIDENCE INQUIRY ESTABLISH THAT THE WEAPON, A 9MM BARETTA PISTOL, WAS DISASSEMBLED AND ITS VARIOUS COMPONENTS WERE CARRIED IN DIFFER-

ENT POCKETS OF APPELLANT'S PANTS.

We hold that appellant's pleas of guilty to this offense were in accord with our understanding of this military crime (*see United States v. Bluel,* 10 USCMA 67, 68, 27 CMR 141, 142 (1958)) and the President's explanation of this offense in paragraph 112, Part IV, Manual for Courts–Martial, United States (1995 edition).\* Accordingly, we conclude that the military judge did not err in finding appellant guilty of this offense. *See generally United States v. Booker,* 42 MJ 267, 268 (1995); *United States v. Ballesteros,* 29 MJ 14 (CMA 1989).

Appellant was charged with "unlawfully carry[ing] on or about his person a concealed weapon, to wit: a pistol" "at Marine Corps Air Station El Toro, Santa Ana, California." The military judge explained to appellant that to be found guilty of this offense the pistol he concealed must have been "a dangerous weapon." He also said to him:

*Now an object is a "dangerous weapon," if it was specifically designed for the purpose o[f] doing grievous bodily harm or it was used or intended to be used by you to do grievous bodily harm.*

Now "grievous bodily harm" means fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs and other serious bodily injury.

Now, a weapon is "carried on or about your person," when it is either on your person or when it is within your immediate reach. Now a weapon is concealed when it is intentionally covered or kept from sight. Now, do you understand those elements and those definitions?

ACC: Yes, sir, I do.

MJ: And taken together, do they correctly describe what you did during this time period?

ACC: Yes, sir.

(Emphasis added.)

The military judge later questioned appellant as to why he was guilty of this offense, as follows:

\* The 1998 version of all cited Manual provisions

MJ: Okay, if you would, consult with your counsel and tell me why you believe you're guilty of this offense.

[Accused does as directed.]

ACC: Sir, to get the weapon from building 6, PMO armory up to my room, so I wouldn't cause a big scare in the barracks or alarm anyone, I purposely hid the weapon to deceive them to get it into my room, sir.

MJ: Okay, so as I understand it, this specification relates to that orders violation that we previously talked about, correct?

ACC: Yes, sir.

MJ: Is this the same 9mm Beretta pistol that you personally owned at the time?

ACC: Yes, sir, it was.

MJ: Now, when this specification alleges that this took place between about June of 1996 and October of 1996, this is on various occasions between that time frame in which you checked the weapon out of the armory, carried it to your room, and either dry fired it, disassembled it, or stored it in your person [sic] wall locker there in the room, correct?

ACC: Yes, sir.

MJ: Now, again, this specification also alleges this took place aboard Marine Corps Air Station El Toro; is that accurate?

ACC: Yes, sir, it is.

MJ: And as I understand it, the areas in which you carried it concealed was pretty much from the armory aboard the base to your BEQ room. And at different times, from your BEQ room back to the armory aboard base; is that correct?

ACC: Yes, sir.

MJ: Now, this weapon, it was the 9mm Beretta that we previously talked about?

ACC: Yes, sir, it is.

MJ: *Do you believe that that particular pistol is specifically designed for the purpose of doing grievous bodily harm?*

ACC: *Yes, sir.*

MJ: *In other words, certainly, you shoot somebody with that pistol, you're going to cause some damage, correct?*

has not been changed.

ACC: *Yes, sir.*

MJ: Now, when you indicated that you carried it on your person, where exactly did you carry it each and every time that you made that trip from the armory to your room and back to the armory?

ACC: I was just wearing jeans and a shirt, sir. I would break it down and put the slide, the main slide assembly in one pocket, the barrel, retaining spring and return spring in the right pocket and tuck the main frame of the pistol in the small of my back, sir.

MJ: Okay, so you basically, at the armory at some point, disassembled the weapon on a bench and then take [sic] the various pieces, pistol grip, barrel, slide and stick them in different pockets of your pants?

ACC: Yes, sir.

(Emphasis added.)

———

Appellant challenges his pleas of guilty to the offense of carrying a concealed weapon in violation of Article 134. He asserts that "the fact that a weapon is disassembled has an impact on virtually every essential element of the Article 134 offense of carrying a concealed weapon." Final Brief at 9. He argues that the admitted fact that his weapon was disassembled raised substantial questions as to whether: it was a "weapon"; it was "dangerous"; "it was being unlawfully carried and concealed as a weapon; and, finally, whether his concealing it was 'prejudicial to good order and discipline'." Final Brief at 7. We disagree.

Long ago this Court recognized that carrying a concealed weapon was an offense under Article 134 and delineated the elements of this offense. *See United States v. Thompson*, 3 USCMA 620, 14 CMR 38 (1954); *United States v. Bentley*, 3 USCMA 625, 14 CMR 43 (1954); *see generally Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). In *Thompson*, we said:

> The vice of carrying the weapon is that the intent to use it unlawfully may be formed at any time. When the urge to kill, rob, or steal is formed, the weapon is handy. Making the concealed possession a crime is for preventative purposes. For that reason, all that is needed to establish the offense is to prove *that the accused concealed a weapon on or about his person; that the weapon was in fact dangerous; and that the conduct would bring discredit on the military service.* Here the prosecution established concealment and the weapon was shown to have been a loaded revolver. This left only the proof of discredit on the military service and we have already concluded that was established.

3 USCMA at 624, 14 CMR at 42 (emphasis added).

The Manual provision in effect at the time of appellant's alleged offense similarly defined this offense. *See* para. 112b, Part IV.

Somewhat later, this Court more particularly defined what a dangerous weapon was for purposes of this offense under Article 134. We said:

> A straight razor is, of course, not designed for use as a weapon. However, it is "naturally considered a dangerous instrument." See 19 Encyclopedia Britannica, page 3. And it is readily capable of use as a weapon. *Its character as a dangerous but innocent instrument, or as a weapon, depends upon the surrounding circumstances. In other words, whether a particular object is a weapon is often a question of fact.* American Jurisprudence points out, in commenting on cases construing particular State statutes, that sometimes the matter is considered from the standpoint of whether the concealed instrument is one "of a class not ordinarily carried about the person for personal convenience."

*Bluel,* 10 USCMA at 68, 27 CMR at 142 (emphasis added).

Again, the Manual explanation of this offense generally tracks our case law in this regard. Paragraph 112c states:

> (2) *Dangerous weapon.* For purposes of this paragraph, a weapon is dangerous if it was specifically designed for the purpose of doing grievous bodily harm, or it was used or intended to be used by the accused to do grievous bodily harm.

The Drafters of the Manual commented on this explanation, as follows:

> 112. **Article 134 (Weapon: concealed, carrying)**
>
> c. *Explanation.* This paragraph is new and is based on *United States v. Tobin,* 17 USCMA 625, 38 CMR 423 (1968); *United States v. Bluel,* 10 USCMA 67, 27 CMR 141 (1958); *United States v. Thompson,* 3 USCMA 620, 14 CMR 38 (1954).

*See* Manual, *supra* at A23–22.

The lynchpin of appellant's argument in this case is his assertion "that the carrying of a concealed firearm that is disassembled, or otherwise inoperable, does not violate Article 134." Final Brief at 6. He urges a *per se* rule and, as authority, he cites a service appellate court decision (*United States v. McCoy,* 18 CMR 923, 933 (AFBR 1955)), although he recognizes that there is contrary military precedent (*United States v. Smith,* 36 MJ 838, 839 (ACMR 1993)). Final Brief at 6–7. He also cites an article in a case reporter but admits it notes that contrary civilian authority exists. *See* Jeffrey F. Ghent, Annotation, *Fact that Gun was Broken, Dismantled, or Inoperable as Affecting Criminal Responsibility Under Weapons Statute,* 81 A.L.R.4th 745, 754 (1990). Final Brief at 6 n. 2.

■ We hold that "a 9mm Beretta pistol" is a weapon specifically designed for purposes of doing grievous bodily harm. *Cf. United States v. Davis,* 47 MJ 484 (1998) (unloaded pistol not a dangerous weapon within meaning of paragraph 54c(4)(a)(ii), Part IV, Manual, *supra,* and Article 128, UCMJ, 10 USC § 928). Moreover, its disassembled status does not necessarily preclude conviction for carrying a concealed weapon under Article 134. *See, e.g., Smith, supra* at 839 (firearm is designed for "purpose of grievous bodily harm"). In our view, it is one circumstance, among many, which can be considered by the factfinder in determining whether this particular military offense has been committed. *See United States v. Booker,* 42 MJ 267, 269 n. 4 (1995) (only held that the weapon was not shown to be "so inaccessible" as a matter of fact as to not be within "immediate reach as a matter of law" (emphasis omitted)); *Bluel,* 10 USCMA at 68, 27 CMR at 142 (characterization of object as dangerous weapon depends upon surrounding circumstances).

■ In this light, appellant's legal argument must fail. Quite simply, he has not shown a "substantial basis" in law for reversal of his conviction. *See generally United States v. Prater,* 32 MJ 433, 436 (CMA 1991). Instead, he has merely shown one fact from which he might logically argue that his particular gun was not a weapon; not dangerous; not being carried as a weapon; and whose concealed conveyance was not a service disorder. However, appellant conceded these factual issues at his trial when he pleaded guilty and relieved the Government of its burden to introduce all its available proof on these questions. *See Booker, supra* at 269; *Bluel,* 10 USCMA at 68 n. 1, 27 CMR at 142 n. 1. In these circumstances, "post-trial speculation" as to these factual issues will not now be countenanced by this Court. *See Ballesteros, supra* at 16; *United States v. Harrison,* 26 MJ 474, 476 (CMA 1988).

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.