# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 23035

———————————

### UNITED STATES
*Appellee*

**v.**

### Josiah M. CASWELL
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 17 March 2025[2]

———————————

*Military Judge*: Joshua D. Rosen.

*Sentence*: Sentence adjudged 31 January 2023 by SpCM convened at Seymour Johnson Air Force Base, North Carolina. Sentence entered by military judge on 20 February 2023: Confinement for 31 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Nicole J. Herbers, USAF (argued); Megan P. Marinos, Esquire.

*For Appellee*: Captain Heather R. Bezold, USAF (argued); Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge PERCLE delivered the opinion of the court, in which Senior Judge ANNEXSTAD and JUDGE DOUGLAS joined.

———————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), pursuant to the *Manual for Courts-Martial, United States* (2024 ed).

[2] The court heard oral argument in this case on 21 October 2024.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

PERCLE, Judge:

A military judge sitting as a special court-martial convicted Appellant, contrary to his pleas, of one specification of unlawfully carrying a concealed weapon, in violation of Article 114, UCMJ, 10 U.S.C. § 914, and one specification of communicating a threat, in violation of Article 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 915.[3,4] The military judge sentenced Appellant to confinement for 31 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence and denied Appellant's request for deferment of the reduction in grade.

Appellant asserts three issues which we have reworded: (1) whether Article 114, UCMJ, for unlawfully carrying a concealed weapon is unconstitutional as applied to Appellant; (2) whether Appellant's conviction for unlawfully carrying a concealed weapon is legally and factually sufficient; and (3) whether Appellant's conviction for communicating a threat is legally and factually sufficient. We specified the following issue for oral argument: (4) whether Appellant's conviction for carrying a concealed weapon under Article 114, UCMJ, is legally sufficient in light of *Tot v. United States*, 319 U.S. 463 (1943), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), where the Government relied on the judicially created permissive inference of unlawfulness from *United States v. Lyons*, 33 M.J. 88 (C.M.A. 1991). We also considered an additional issue, not raised by Appellant, which was identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review: (5) whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), or *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

We address issues (1), (2) and (4) together. We agree with Appellant that the evidence is legally and factually insufficient to support his conviction for unlawfully carrying a concealed weapon in violation of Article 114, UCMJ. We therefore set aside the specification of Charge I and Charge I. As to issue (3)

_____

[3] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*). Unless otherwise noted, all references in this opinion to the Military Rules of Evidence (Mil. R. Evid.) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2023 ed.).

[4] Appellant was also acquitted of one specification of communicating a threat in violation of Article 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 915.

we find Appellant's conviction for communicating a threat in violation of Article 115, UCMJ, legally and factually sufficient; however, we find that modification to Specification 1 of Charge II is required as discussed in detail *infra*.

As to the remaining issue (5), we find no error materially prejudicial to Appellant's substantial rights. We affirm the remaining findings of guilty, as modified, and the sentence, as reassessed.

## I. BACKGROUND

The charged offenses stem from an incident on a single night on 21 August 2022 between Appellant and JN,[5] who is the named victim in this case. Several Airmen and spouses, including *inter alia* Senior Airman (SrA) JM, JN, Airman First Class (A1C) DS, SrA JI, and DS's wife AC, were gathered at SrA JI's house. Appellant later joined the gathering. This evening was the first time JN and Appellant met.

While at the house, Appellant told SrA JM about his handgun, then "showed off" his weapon to SrA JM.[6] While at the house, other partygoers witnessed Appellant drinking and playing beer pong.[7] After a while, everyone but an unnamed couple left to go to a local bar. Appellant rode with A1C DS and AC to the bar. In the car on the way to the bar, Appellant asked A1C DS if he wanted to see his new firearm. A1C DS agreed, so Appellant showed the handgun to him.

Appellant and the rest of the group arrived at the bar at approximately 2300 hours. SrA JI and JN each ordered beers which they took outside and drank while sitting at a large table on the patio. Appellant was also seen drinking alcohol at the bar establishment. At approximately 2345 hours, Appellant approached SrA JI and JN on the bar patio and stood near them by a large table. JN and Appellant bantered about benign topics, but tension escalated when the subject changed to criticizing JN's romantic partner. JN warned Appellant against discussing his romantic partner, which caused Appellant to respond with something along the lines of, "Do you think you could take me?" or "What are you going to do about it?" JN retorted, "My girlfriend could take

---

[5] JN was an active duty servicemember in the U.S. Air Force both during the time of the incident and Appellant's court-martial.

[6] At trial, there was no evidence presented regarding the exact model of gun carried by Appellant this evening. Neither side contests that the gun carried was anything other than a dangerous weapon, as defined in the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 52.c.(4)(b).

[7] At trial, there was some testimony that there may have been no beer in the beer pong cups.

you," leading Appellant to ask again, "Do you think YOU could take me?" At this point, Appellant lifted the bottom left of his shirt and showed his concealed firearm. Appellant then stated either, "Are we going to do this or what?" or "So what are we going to do?" and sat down at the table approximately two feet away from JN. While seated, Appellant continued to antagonize JN—saying things like, "So are we still gonna do this," "What are you trying to do," "Are we still gonna do this?" During this phase of the altercation, Appellant's firearm remained visible—until Appellant "stood up, walked towards [JN], [and] cock[ed] the weapon over [JN's] lap area, [in the direction of his] right leg." Before the situation was over, JN took out his phone and was able to capture a short video of Appellant at the table with his gun.

SrA JI was not paying attention to their exchange until he overheard Appellant say, "that's it," and then heard a sound which resembled the chambering of a bullet in a firearm. At this point, SrA JI went inside to find a coworker who could "de-escalate the situation." When the exchange ended, Appellant went into the bar, gave his gun to AC, then locked himself in A1C DS's car, appearing upset. The remainder of the evening continued without further incidents.

Additional facts necessary to resolve the issues are included below.

## II. DISCUSSION

### A. Unlawful Concealed Carry

Appellant claims his conviction is factually and legally insufficient. He argues that the permissive inference of unlawfulness enunciated in *Lyons*[8] in relation to concealed-carry offenses under Article 134, UCMJ, should not apply to his case. He also argues the Government offered no evidence or law that proved the essential element of unlawfulness. In a similar vein, Appellant argues, *inter alia*, that Article 114, UCMJ, is unconstitutional as applied to Appellant because it deprived him of his right to a fair trial by effectively relieving the Government of its burden to prove that Appellant's act of carrying a concealed weapon was unlawful. Additionally, Appellant asserts Article 114, UCMJ, is unconstitutional as applied because the permissive inference of unlawfulness violates Appellant's Second Amendment right to bear arms.[9]

---

[8] In *Lyons*, our superior court's predecessor court found for the first time that "unlawfulness of the carrying is an essential element of the offense of carrying a concealed weapon under the first two clauses of Article 134 and that such unlawfulness may be inferred, absent some evidence to the contrary, from the fact of the carrying." 33 M.J. at 91.

[9] U.S. CONST. amend. II.

On appeal, the Government contends, *inter alia*, the permissive inference crafted in *Lyons* is constitutional and that the *Lyons* permissive inference of unlawfulness should apply to Appellant's case, and it carried the Government's burden for both legal and factual sufficiency. The Government further argues that even if the *Lyons* inference does not apply or is unconstitutional, this court could find a conviction for unlawfully carrying a concealed weapon in violation of Article 114, UCMJ, legally and factually sufficient by relying on a "set" of circumstantial evidence contained in the record of trial. Specifically, the Government argues that, when combined, the following evidence carries the burden of proof for the unlawfulness element beyond a reasonable doubt: (1) evidence related to the concealed carry database,[10] inferring Appellant was required to have a permit to carry a concealed handgun in North Carolina, and that if he had one, it would have been in this database but was not; (2) evidence related to Appellant passing the weapon off to another person after the altercation with JN, inferring Appellant's consciousness of guilt as to the unlawfulness of his carrying; and (3) evidence related to Appellant's presence in a bar while carrying a concealed weapon, inferring unlawfulness of the carrying by proximity to or in a particular establishment. During its oral argument before this court, the Government also argued that the *Lyon*s presumptive inference is nothing more than "well recognized use of circumstantial evidence."

Upon careful consideration of the Issue (2) and record before us, we conclude that Appellant's conviction for unlawfully carrying a concealed weapon is factually and legally insufficient and set aside his conviction to the specification of Charge I and Charge I. As a result of this finding, we need not address the remaining assignments of error related to this conviction.

**1. Additional Background**

Prior to trial, pursuant to Mil. R. Evid. 404(b), the Government provided notice to the Defense of its intent to admit evidence that: (1) Appellant "was consuming alcohol while in the possession of the handgun," and (2) Appellant "possessed the handgun at [the bar]" as "preparation and opportunity to commit the charged offenses." The Defense objected to the Government's use of the evidence at trial under Mil. R. Evid. 404(b) by timely filing a motion in limine.

---

[10] During findings, Special Agent (SA) WL testified as the investigating agent on Appellant's case from the Air Force Office of Special Investigations. He testified he was "aware" of how to use "the database" to "see if individuals have concealed carry permits." SA WL testified he did a search for "that" in this case. The military judge sustained an objection to counsel's next question pertaining to whether, based on that database search, Appellant had a concealed-carry permit on 21 August 2022. No additional questions were asked or answered related to the database. The military judge clarified after SA WL left the stand what had come in as evidence—that the agent had access to that permit database.

The military judge received briefs and arguments by both counsel before issuing his ruling.

The miliary judge ruled that both the evidence that (1) Appellant "was consuming alcohol while in the possession of the handgun" and that (2) Appellant "possessed the handgun at [the bar]" was admissible as *res gestae* evidence for the charged offenses.

Separately, the military judge found the evidence that Appellant "was consuming alcohol while in the possession of the handgun was *also* admissible under Mil. R. Evid. 404(b) because "[Appellant] consuming alcohol both in and prior to [the bar] is inextricably related to the alleged misconduct in the sole specification of Charge I" because the "second element . . . requires that the carrying [be] unlawful, and North Carolina General Statute [(N.C. GEN. STAT.)] § 14-415.11 states, 'it shall be unlawful for a person to carry a concealed handgun while consuming alcohol or at any time while the person has remaining in the person's body any alcohol.'"[11] While this North Carolina statutory language was considered by the military judge during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing, it was not admitted as evidence on the record—whether by admission or judicial notice—during the findings phase of the trial.

Trial defense counsel also orally moved "to dismiss based on failure to state an offense and lack of notice regarding Charge I and its Specification[ ]." The Defense argued there were several ways one could violate the concealed carry law under the North Carolina Statute provided by the Government, and without clarity they did not have adequate notice as to the theory of liability under the unlawfulness element. This lack of notice, according to the trial defense counsel, opened Appellant up to double jeopardy. The military judge noted that the Defense's concern about double jeopardy was "an issue."

The Government rested on the theory that Appellant was unlawfully carrying a concealed weapon while drinking alcohol in violation of N.C. GEN. STAT. § 14-415.11(c2). During this argument, the Government pointed to the prior Mil. R. Evid 404(b) notice and ruling and then requested that the court take judicial notice of N.C. GEN. STAT. § 14-415.11(c2).

---

[11] At the time of Appellant's offense, N.C. GEN. STAT. § 14-415.11(c2) (2023), stated:

> It shall be unlawful for a person, with or without a permit, to carry a concealed handgun while consuming alcohol or at any time while the person has remaining in the person's body any alcohol or in the person's blood a controlled substance previously consumed, but a person does not violate this condition if a controlled substance in the person's blood was lawfully obtained and taken in therapeutically appropriate amounts or if the person is on the person's own property.

After hearing argument on the matter, the military judge denied the defense motion to dismiss for failure to state an offense, and deferred ruling on the Government's request for judicial notice of the North Carolina statute. The military judge never revisited the request for judicial notice of the statute and never announced on the record he was taking judicial notice of any matters.[12] The Government also never renewed its request for judicial notice of the North Carolina statute.

During closing argument at trial, the Government did not reference any admitted facts related to the proof of the element of unlawfulness. Government counsel also did not reference the North Carolina statute discussed *supra* and *infra* as it related to the unlawfulness element and did not discuss any other law alleged to have been violated by Appellant's actions. In fact, the Government's entire closing argument regarding proof of the element of unlawfulness was about the *Lyons* permissive inference, stating: "The carrying was unlawful. [Appellant] had a firearm on his person, and there's an inference that the carrying of a concealed firearm is unlawful in the absence of evidence to the contrary. There has been no evidence to suggest that [Appellant] had this firearm, this concealed firearm, lawfully."

**2. Law**

### a. Judicial Notice

"The military judge must inform the parties *in open court* when, without being requested, he or she takes judicial notice of an adjudicative fact essential to establishing an element of the case." Mil. R. Evid. 201(c) (emphasis added).

### b. Statutory Interpretation

Our interpretation of the terms in Article 114, UCMJ, is a question of statutory interpretation. *United States v. Hiser*, 82 M.J. 60, 64 (C.A.A.F. 2022). This court reviews matters of statutory interpretation de novo. *Id.* (citing *United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016)).

### c. Legal Sufficiency

We review issues of legal sufficiency de novo. *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

---

[12] At the time the military judge made this ruling, Appellant had indicated his choice of forum would be trial by members. Based on Appellant's choice of forum, the military judge opted to address the matters described *supra* during the discussion on instructions. However, after all motions and rulings were complete, Appellant elected trial by military judge alone.

Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). "[T]he [G]overnment is free to meet its burden of proof with circumstantial evidence." *Id.* (citations omitted). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, ___ M.J.___, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

### d. Factual Sufficiency

We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 502, at *5 (C.A.A.F. 6 Sep. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)). The current version of Article 66(d)(1)(B), UCMJ, states:

> (B) FACTUAL SUFFICIENCY REVIEW.
>
> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.
>
> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
>
> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
>
> (II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (2024 *MCM*).

"[T]he requirement of 'appropriate deference' when a [Court of Criminal Appeals (CCA)] 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 2024 CAAF LEXIS 502, at *8 (third and fourth alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at *10 (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at *12. First, we must decide that evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

### e. Unlawful Concealed Carry under Article 114, UCMJ[13]

Appellant was charged with unlawfully carrying a concealed weapon in violation of Article 114, UCMJ, which required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant carried a concealed weapon, to wit: a firearm, on or about his person; (2) that the carrying was unlawful; and (3) that the firearm was a dangerous weapon. *See MCM*, pt. IV, ¶ 52.b.(7).

### i) Defined elements under Article 114, UCMJ

First, a weapon is "concealed" when it is "carried by a person and intentionally covered or kept from sight." *MCM*, pt. IV, ¶ 52.c.(4)(a). Second, an object is a "dangerous weapon" if it "was specifically designed for the purpose of doing grievous bodily harm or it was used or intended to be used by the accused to

---

[13] Pursuant to the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114–328, 130 Stat. 2000 (2016), the offense of unlawful concealed carry of a dangerous weapon moved from Article 134, UCMJ, to Article 114, UCMJ, thereby removing the requirement for the Government to prove the terminal element. Reference to the lack of a terminal element means the offense "does not include an element that the conduct be prejudicial to good order and discipline or that it discredit the military." *Hiser*, 82 M.J. at 67.

do grievous bodily harm." *MCM*, pt. IV, ¶ 52.c.(4)(b). Finally, the words "on or about" mean that "the weapon was carried on the accused's person or was within the immediate reach of the accused." *MCM*, pt. IV, ¶ 72.c.(4)(c).

### ii) Undefined element

There is no definition given under Article 114, UCMJ, or *MCM*, pt. IV, ¶ 52.c.(4), for the essential element of unlawfulness.[14]

Absent a definition under Article 114, UCMJ, for the element of unlawfulness, we consider three sources: "(1) the plain meaning of the term [unlawfulness]; (2) the manner in which Article III courts have interpreted the term; and (3) guidance, if any, the UCMJ may provide . . . ." *United States v. Kuemmerle*, 67 M.J. 141,143 (C.A.A.F. 2009) (citing *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006) (in the absence of a statutory definition of a particular term, courts look "to regular usage to see what Congress probably meant"); *Leocal v. Ashcroft*, 543 U.S. 1, 9, (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning."); *United States v. McCollum*, 58 M.J. 323, 340 (C.A.A.F. 2003) ("[W]ords should be given their common and approved usage." (alteration in original) (citation omitted))). In the absence of a statutory definition, the plain language of a statute will control unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (citations omitted). "[W]hether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case" is the starting point for determining the meaning of the statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Finally, "when a word has an easily graspable definition outside of a legal context, authoritative lay dictionaries may also be consulted." *United States v. Schmidt*, 82 M.J. 68, 75–76 (C.A.A.F. 2022) (Ohlson, C.J., concurring in the judgment) (footnote and citation omitted), *cert. denied*, *Schmidt v. United States*, 143 S. Ct. 214 (2022).

*Black's Law Dictionary* defines "unlawful," *inter alia*, as "unauthorized by law; illegal." *Unlawful*, BLACK'S LAW DICTIONARY 1850 (11th ed. 2019). Furthermore, the term "unlawful" appears in other punitive articles of the UCMJ.

---

[14] At the time of Appellant's trial and during his appeal, the *Military Judges' Benchbook* listed the prior case law, *i.e. Lyons,* in a "Note" section pertaining to proof of the element of unlawfulness. *Military Judges' Benchbook* (hereinafter *Benchbook*), Dep't of Army Pamphlet 27-9 at 1311–12 (29 Feb. 2020). We note the *Benchbook* is not a source of law but represents a snapshot of the prevailing understanding of the law among the trial judiciary, as it relates to trial procedure. *See United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013) ("[T]he Benchbook is not binding as it is not a primary source of law, the Benchbook is intended to ensure compliance with existing law"). While the *Benchbook* may have suggested that the *Lyons* inference moved over from the prior Article 134, UCMJ, offense, the *Benchbook* is not an authority this Court recognizes to make such a determination.

For example, Article 120(g)(5), UCMJ, 10 U.S.C. § 920(g)(5), defines "unlawful force" as "an act of force done without legal justification or excuse." *See MCM*, pt. IV, ¶ 60.a.(g)(5). Similarly, pursuant to Article 118, UCMJ, 10 U.S.C. § 918, a "[k]illing [of] a human being is unlawful when done without legal justification or excuse." *See MCM*, pt. IV, ¶ 56.c.(1) (citation omitted).

### *f. Stare Decisis*

Stare decisis is defined as:

> [T]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation. The doctrine encompasses at least two distinct concepts . . . : (1) "an appellate court[ ] must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself" (horizontal stare decisis); and (2) courts "must strictly follow the decisions handed down by higher courts" (vertical stare decisis).

*United States v. Quick*, 74 M.J. 332, 343 (C.A.A.F. 2015) (Stucky, J., joined by Ohlson, J., dissenting) (second alteration in original) (citations omitted).

The doctrine of horizontal stare decisis ordinarily obliges a court to adhere to our own precedent in interpreting successive cases on the same subject matter. "The doctrine of stare decisis is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). In evaluating the application of stare decisis, CCAs consider the following factors: "whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *United States v. Quick*, 74 M.J. 332, 336 (C.A.A.F. 2015)).

Under the doctrine of vertical stare decisis, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, (1989). If there is binding superior case law, the lower court is "bound either to follow [the superior case] or to distinguish it." *United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996).

The Court of Appeals for the Armed Forces (CAAF) has found that when offenses move from Article 134, UCMJ, to another article and lose the terminal element, the prior case law on the subject matter may not be binding. *Hiser*, 82 M.J. at 67 (where the CAAF distinguished appellant's case from the

precedent set in *United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008), in part because in the intervening time between the two cases the offense of wrongful broadcasting or distribution of intimate visual images was moved from Article 134, UCMJ, where the terminal element was one of the elements of the offense, to Article 117a, UCMJ, 10 U.S.C. § 917a, without retaining the terminal element).

### g. The Second Amendment

Recently, the Supreme Court of the United States held "that the Second[15] and Fourteenth[16] Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022). The Supreme Court further held "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Relevant to the right to carry a handgun, the Court said, "[t]he Second Amendment's plain text thus presumptively guarantees . . . a right to 'bear' arms in public for self-defense." *Id.* at 33. The Court elaborated that "right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* (citing *District of Columbia v. Heller*, 554 U. S. 570, 584 (2008)).

### 3. Analysis

#### a. Legal Sufficiency

We focus our analysis on the contested element of unlawfulness for violation of Article 114, UCMJ.[17] As we discussed *supra*, this element is undefined in Article 114, UCMJ. First, as we acknowledge the doctrine of vertical stare decisis, we recognize that if *Lyons* is directly controlling, we must apply it. However, we find *Lyons* it is not directly controlling on this case, in part because it applied to an unlawful concealed carry offense under Article 134, UCMJ, not Article 114, UCMJ, and prior case law does not automatically transfer. *See Hiser*, 82 M.J. at 67. We further find meaningful differences

---

[15] U.S. CONST. amend. II.

[16] U.S. CONST. amend. XIV.

[17] As to the remaining essential elements of the crime, we find no rational argument to conclude that, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in favor of the Government, a rational trier of fact could not have found them proven beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98 (citation omitted).

discussed *infra* which make *Lyons* distinguishable from Appellant's case at all levels of potentially applicable stare decisis.

In looking at the doctrine of horizontal stare decisis, we find our prior precedent under Article 134, UCMJ, is similarly unpersuasive and inapplicable. In looking to how this court has viewed the element of unlawfulness as it applies to Article 114, UCMJ, in cases adjudicated subsequently to the publication and implementation of the 2019 version of the Manual for Courts-Martial, we find that this court had the opportunity to review unlawful concealed carry convictions on four prior occasions, but none of those cases addressed the elements, definitions, or substance of the new Article 114, UCMJ, offense. *See United States v. Reimers*, No. ACM 40141, 2023 CCA LEXIS 38 (A.F. Ct. Crim. App. 26 Jan. 2023) (unpub. op.), *rev. denied*, 83 M.J. 313 (C.A.A.F. 2023); *United States v. Injerd*, No. ACM 40111, 2022 CCA LEXIS 727 (A.F. Ct. Crim. App. 20 Dec. 2022) (unpub. op.); *United States v. Tarnowski*, No. ACM 40110, 2022 CCA LEXIS 653 (A.F. Ct. Crim. App. 4 Nov. 2022) (unpub. op.), *aff'd*, 83 M.J. 443 (C.A.A.F. 2023); *United States v. Stefanek*, No. ACM 39895, 2021 CCA LEXIS 217 (A.F. Ct. Crim. App. 5 May 2021) (unpub. op.). Because none of these cases cited have analysis of the unlawfulness element helpful for our analysis purposes, we find them unpersuasive. Thus, Appellant's case is a case of first impression before us as to the meaning of the word "unlawful" after its move to Article 114, UCMJ.

We now consider how the Article III courts have addressed this issue in the past, the term's plain meaning, and guidance in the UCMJ. *See Kuemmerle*, 67 M.J. at 143 (citations omitted).

### i) Past Article III interpretation and guidance in the UCMJ

Looking first at how Article III courts have treated this element in the past, the doctrine of *stare decisis* would have us look to prior case law, including *Lyons*.[18] This precedent should control unless "the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *Blanks*, 77 M.J. at 242 (citation omitted). We have carefully considered this doctrine and find that Congress's choice to move this offense from Article 134, UCMJ, to Article 114, UCMJ, was an intervening event that severed the prior precedent from control or consideration of the new Article 114, UCMJ, for three reasons we discuss below. This finding is consistent with an additional

---

[18] Again, we acknowledge we do not have the authority to opine or to conclude whether our superior court's holding in *Lyons* remains good law after the Supreme Court's ruling in *Bruen,* only to determine if it is directly applicable to the case at bar.

intervening event—new Second Amendment case law expounded upon in *Heller* and *Bruen* by the Supreme Court.

Turning first to congressional intent, we note that Congress could have expressly incorporated the prior Article 134, UCMJ, *Lyons* inference into Article 114, UCMJ, but did not. We find intent in Congress's choice to be silent about previously established guidance. It is plain to see that at the time when Article 114, UCMJ, was written, Congress knew it could expressly state what law and definitions moved together with offenses it chose to relocate to different articles of the UCMJ.[19] Therefore, the absence of preserving the prior definition of unlawfulness communicates intent *not* to transfer over substantial portions of the offense as it was understood under Article 134, UCMJ, to the new Article 114, UCMJ.

We say this in part because of our review of a parallel and contemporaneous change by Congress to an adjacent article of the UCMJ—Article 115. Pursuant

---

[19] We also note there is at least one other place where judicially created permissive inference case law is incorporated into the language of an article—Article 112a, UCMJ, 10 U.S.C. § 912a. The Analysis of Punitive Articles published in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), notes that the 1993 amendment reflected changes to the statutory language that were made in response to developments in the case law "defin[ing] the term 'use' and delineat[ing] knowledge of the presence of the controlled substance as a required component of the offense" and recognizing "[t]he validity of a permissive inference of knowledge." 2016 *MCM*, App. 23, at A23-13 (first citing *United States v. Ford*, 23 M.J. 331 (C.M.A. 1987); then citing *United States v. Harper*, 22 M.J. 157 (C.M.A. 1986)) (additional citation omitted). Thus, we hesitate to transpose case law related to permissive inference under Article 112a, UCMJ, to our analysis.

First, Article 112a, UCMJ, inference was added to the Code by Congress. By contrast, the *Lyons* test remains judicially created only as it has not been incorporated into the statutory language despite multiple opportunities to do so in successive amendments to the Code. The history of Article 112a, UCMJ, demonstrates that Congress is aware of emerging case law and is amenable to changing the Code in response to judicial rulings. We find it telling that Congress did not make a similar addition to Article 114, UCMJ, when it otherwise made changes.

Second, and importantly, the inference of wrongfulness in drug offense cases passes rational analysis because any substance charged under Art 112a, UCMJ, *e.g.*, cocaine, methamphetamine, etc., is by its nature a controlled substance. It is logical then that once the Government presents sufficient proof that a controlled substance was present in an accused's urine, the wrongfulness may be inferred absent evidence to the contrary because the substance itself is unlawful. Article 114, UCMJ, does not fit neatly into the framework of the case before this court because the core of the issue—a person's right to carry a weapon protected by the Second Amendment—is not inherently illegal. Therefore, Article 112a, UCMJ, and its express allowance for a permissive inference of wrongfulness will not be further discussed in our analysis.

14

to the same Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, 130 Stat. 2000 (2016), Congress moved the offense of communicating a threat from Article 134, UCMJ, to Article 115, UCMJ. The analysis section of this Code expressly noted that prior case law on communicating a threat moved with it and would continue to apply. *See MCM*, App. 17, at A17-9. ("The explanations for threat and wrongful are amended and are consistent with *Elonis v. United States*, [575 U.S. 723] (2015), and *United States v. Rapert*, 75 M.J. 164 (C.A.A.F. 2016).""). We further note that in the prior versions of the *Manual for Courts-Martial* analysis for the offense of unlawfully carrying a concealed weapon in violation of Article 134, UCMJ, previously expressly referenced cases like *United States v. Tobin*, 38 C.M.R. 423 (C.M.A. 1968), and *United States v. Thompson*, 14 C.M.R. 38 (C.M.A. 1954), and we find it consequential that these express references to case law were deleted when Congress moved this offense to Article 114, UCMJ.[20]

Second, and importantly, the prior *Lyons* case law[21] analyzed the offense, including the unlawfulness element, entirely under Article 134, UCMJ, framework which required a uniquely military nexus *and* proof of a terminal element. The distinction between the old and new concealed carry offense is especially clear when one reads the rationale for creating the Article 134, UCMJ, concealed carry offense as explained in *Thompson*, 14 C.M.R. at 40, where our

---

[20] *See, e.g.*, "This paragraph is based on *United States v. Tobin*, [38 C.M.R. 423 (C.M.A. 1966)]; *United States v. Bluel*, [27 C.M.R. 141 (C.M.A. 1958]; *United States v. Thompson*, [14 C.M.R. 38 (C.M.A. 1954)]. Subsection (3) is based on *United States v. Bishop*, 2 M.J. 741 (A.F.C.M.R. 1977), *pet. denied*, 3 M.J. 184 (1977)." 2016 *MCM*, App. 23, at A23-28. No version of the Article 134, UCMJ, unlawful concealed carry analysis made any reference to *Lyons*.

[21] We acknowledge that the *Lyons* permissive inference has since been applied in our cases where the offense of unlawful concealed carry remained under Article 134, UCMJ. *See, e.g.*, *United States v. Davis*, 54 M.J. 865, 867 (A.F. Ct. Crim. App. 2001) (where the appellant challenged his conviction under Article 134, UCMJ, because there was "no evidence that his [concealed carry] violated any law, statute, ordinance, or regulation," and this court found "there is no such requirement," because "[i]f there were, the prosecution would not be able to rely on the inference that carrying a [concealed] dangerous weapon is unlawful in the absence of credible evidence to the contrary" (citation omitted)). Even after the Supreme Court's holding in *Heller*, this court concluded, "There is still a rational connection between the appellant carrying a concealed weapon *onto the base* and the unlawfulness of that act such that the use of the [*Lyons*] inference remains permissible." *United States v. Hooper*, No. ACM 38307, 2014 CCA LEXIS 685 at *11 (A.F. Ct. Crim. App. 24 Sep. 2014) (unpub. op.) (emphasis added) (upholding the application of the *Lyons* test to an Article 134, UCMJ, concealed carry offense on a military base).

superior court noted that when analyzing the constitutionality of this offense under Article 134, UCMJ, "we are not here concerned with a question of the applicability of local law to members of the military;" and in *Tobin*, 38 C.M.R. at 429, where the court emphasized that *Thompson* "expressly held carrying a concealed weapon . . . constitute[s] conduct to the prejudice of good order and discipline, quite without regard to local law." Clearly, when the unlawful concealed carry offense was under the umbrella of the Article 134, UCMJ, offenses, its gravamen was uniquely military and expressly independent of any state or federal law. This potentially antiquated yet distinct rationale from *Thompson* and *Tobin* was expressly refenced in the Article 134, UCMJ, analysis while the offense remained under Article 134, UCMJ. *See* 2016 *MCM*, App. 23, at A23-28. Then, this same rationale was removed when unlawful concealed carry was shifted to Article 114, UCMJ. *See MCM*, App. 17, at A17-9. Without further comment on the underlying rationale of *Thompson* and *Tobin*, our review of the legislative and case-law history leaves us convinced that we must follow the manual's clear intent to walk away from the military framework of unlawful concealed carry offense under the old Article 134, UCMJ, and from its associated case-law.

Finally, in the case before us, the facts show that Appellant was not on a military base at the time of alleged offense, and his Article 114, UCMJ, conviction is not related to military custom or control, making Appellant's case distinguishable from *Lyons* and following cases, thereby lessening its applicability here. *See also United States v. Clemmons*, No. ARMY 20120008, 2013 CCA LEXIS 408, at *8 n.* (A.C.C.A. 16 May 2013) (unpub. op.) (citations omitted) (where our sister court "decline[d] to apply the permissible inference of unlawfulness" when reviewing a concealed carry conviction under Article 134, UCMJ, due to factual distinctions from *Tobin* and *Thompson*), *pet. denied*, 72 M.J. 435 (C.A.A.F. 2013).

In concluding that we must divest from the old Article 134, UCMJ, and its case law, we also seek to be consistent with recent case law, like the Supreme Court's decision in *Bruen*. Those recent cases seem to require the opposite presumption than the one articulated in *Lyons*—that is, Airmen and Guardians are presumed allowed to carry a weapon on their person, concealed or otherwise, unless it is restricted by law. *See Bruen*, 597 U.S. at 10. Put another way, post *Bruen*, an individual has a presumed constitutional right to carry a weapon on their person for self-defense. *Id.* We note that *Bruen* highlights the vast differences in state law with respect to how many states have their own criteria for licensing and carrying weapons. Given the complex nature of this right and its possible curtailments, we decline to carry over any previous presumption of unlawful action on the part of any Airman or Guardian who carries a weapon on his or her person, nor will we make illogical and unreasonable connections about this conduct as it relates to any state or local law, especially

when a servicemember is off-duty and off-base. *See id.* at 13–15. Therefore, we decline to apply *Lyons* or any case law related to the element of unlawfulness from when the offense of unlawfully carrying a concealed weapon resided under Article 134, UCMJ, to convictions for such offenses under Article 114, UCMJ. We further conclude no rational trier of fact could have applied the *Lyons* inference to the facts of this case for the reasons stated above.

Absent the *Lyons* permissive inference and prior case law under Article 134, UCMJ, we next determine what a rational trier of fact should have used to define and evaluate the essential element of unlawfulness.

### ii) The plain meaning of "unlawful"

Turning to the plain meaning of the word "unlawful," we determine the appropriate definition is the *Black's Law Dictionary* definition as it accurately captures the most common use of the word both by laypersons and in the legal community: "unauthorized by law; illegal." BLACK'S LAW DICTIONARY, *supra*, at 1850. Unlike a permissive inference that could satisfy a burden of proof beyond a reasonable doubt, this definition requires the Government to prove with evidence beyond a reasonable doubt that a person who was carrying a concealed weapon was unauthorized to do so by law.

The Government's assertion on appeal is that, absent the permissive inference of *Lyons*, there is enough circumstantial evidence in Appellant's case from which a rational trier of fact could draw reasonable inferences to conclude the element of unlawfulness was proven.[22] We assess whether a rational trier of fact, viewing the direct and circumstantial evidence presented in the light most favorable to the Government and drawing all reasonable inferences therefrom, could have found that Appellant's actions were unlawful beyond a reasonable doubt. We find the result is a legally insufficient conviction. Put bluntly, despite the low threshold required under the legal sufficiency standard, the Government did not prove unlawfulness in this case.

At this point, we must discuss which, if any, facts related to the element of unlawfulness were proven at trial. At the oral argument, the Government highlighted three pieces of evidence admitted at trial which they argue prove the

---

[22] The Government also argues "[s]ufficient facts were introduced to rationally connect Appellant's conduct to the inference of unlawfulness," going on the premise that where sufficient evidence is introduced, "a permissive inference . . . [becomes] nothing more than a reminder to the [trier of fact] that they need not check their common sense at the door to the deliberation room," citing *United States v. Brewer*, 61 M.J. 425, 437 (C.A.A.F. 2005). However, we declined, *supra*, to apply the *Lyons* permissive inference and need not further consider this point. Instead, we review admitted evidence and the inferences drawn therefrom, consistent with the plain meaning of direct and circumstantial evidence.

element of unlawfulness: (1) the concealed carry database testimony, (2) the argument and inference of Appellant's consciousness of guilt, and (3) the fact that Appellant carried the weapon concealed at a drinking establishment. The Government's position is that a rational trier of fact could consider all three in the aggregate as sufficient to carry their burden of proving the element of unlawfulness for our legal sufficiency review. We disagree.

Because each piece proffered would support a different theory of unlawfulness, the additive theory of proof must be abandoned. First, the theory that Appellant's carrying was unlawful because he did not possess a permit for concealed carry is not made more or less likely by Appellant's location of carry or Appellant's consciousness of guilt evidenced by Appellant passing his weapon to AC. Put another way, if Appellant were required to have a permit to carry a concealed weapon but did not have such a permit, he would be unlawfully carrying the weapon regardless of his location, or guilty conscience. Adding the other two facts does nothing to prove, or disprove, the lawfulness of the concealed carry related to a permit. Second, the Government's theory that Appellant's carrying was unlawful because of his location, in a bar, is not made more or less likely by Appellant's consciousness of guilt or his permit status. Said differently, if Appellant's carrying were unlawful while in or around the drinking establishment, then even if Appellant had a permit or did not act suspiciously, Appellant's carrying in the bar still would have been unlawful. Finally, if the Government's theory of unlawfulness were that Appellant was showing consciousness of guilt, Appellant's location or permit status are also irrelevant to proving that theory.[23] Therefore, a rational trier of fact could not have reasonably aggregated these pieces of evidence to carry the Government's burden

---

[23] While we find it important to explain why these categories of evidence are not cumulative for the element of unlawfulness, we note here that we do not find any evidence of Appellant's consciousness of guilt relevant to determining the element of unlawfulness. Appellant's knowledge of or ignorance of the law is not proof of the law itself. Consciousness of guilt evidence may be relevant when inferring an element of *mens rea*, like knowledge or knowing use, when what is in the mind of the accused is relevant to an offense. *See, e.g., United States v. Pope*, No. ACM S31578, 2010 CCA LEXIS 152, at *5–6 (A.F. Ct. Crim. App. 8 Mar. 2010) (unpub. op.) (where "[a witness's testimony was relevant on the knowing use element of the specification [alleging violation of Article 112a, UCMJ,] and arguably highlighted consciousness of guilt on the part of the appellant"). However, there is no *mens rea* requirement under Article 114, UCMJ, for unlawful concealed carry. Therefore, what is in the mind of the accused about the law is not relevant to carrying the Government's burden to prove the carrying was, in fact, unlawful. This is especially important when the charged offense already requires secretiveness in the form of concealment, which in some circumstances would not be unlawful.

when, even after viewing the evidence in the light most favorable to the Government, each inference is unrelated to the others' relevance, if any.

Importantly, the theories of unlawfulness articulated by the Government on appeal differ from the one the Government argued at trial. At trial, the Defense objected and requested notice from the Government of its theory of unlawfulness. Both the military judge's ruling under Mil. Rul. Evid. 404(b), and the Government's answer to such objections narrowed the Government's theory of unlawfulness to one theory of liability—a violation of North Carolina law that prohibits persons from consuming alcohol while carrying a concealed weapon. Thus, we must assess the legal sufficiency of Appellant's conviction under this theory of liability.[24]

When applying the three pieces of evidence described above to the theory of unlawfulness litigated at trial, each piece's relevance is extremely low. Evidence of a concealed carry permit or lack thereof, and evidence of alleged consciousness of guilt do not make any fact of consequence to the charged theory of liability any more or less likely. We see no reasonable inferences to be drawn to carry the Government's burden even when viewing these two sets of facts in the light most favorable to the Government. However, we do find that Appellant's presence in a bar, a place that serves alcohol, bears some relevance to determining if Appellant violated the North Carolina law proscribing concealed carry while under the influence of alcohol and consider it in our analysis below.

The question remains—do the facts proven, in the context of the theory of liability litigated *at trial,* and reasonable inferences drawn therefrom, survive the legal sufficiency standard of review? We find that they do not. Again, facts proved relevant to the Government's theory of unlawfulness at trial were that Appellant consumed some amount of alcohol and was at a bar on the evening in question while his handgun was concealed under his shirt. The Government asserts a finder of fact could *reasonably* infer if a person consumed an unknown amount of alcohol at a bar while carrying a concealed dangerous weapon, such a carrying was unlawful based only on common sense. We find this inference

---

[24] See*, e.g., Mendoza*, 2024 CAAF LEXIS 590, at *18 (quoting *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)) (where the Government cannot charge and argue different theories of factual and legal liability, as "[d]oing so robs the defendant of his constitutional 'right to know what offense and under what legal theory he will be tried and convicted'"). Were we to assume that we could analyze the facts under different theories of unlawfulness than those litigated at trial, even after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences, these theories and facts taken together still result in a legally insufficient conviction for the same reason the litigated theory did—a rational trier of fact could not have found the element of unlawfulness proven beyond a reasonable doubt.

is too strained to withstand reason, especially considering Appellant's constitutional right to carry a weapon in self-defense off-base, off-duty in civilian clothes. After all, "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Bruen*, 597 U.S. at 23 (quoting *Heller*, 554 U.S. at 634). We conclude no rational trier of fact could have drawn this unreasonable inference, especially considering this was the only evidence presented on this theory to carry the Government's burden to prove the essential element of unlawfulness.

It bears mentioning that the Government's own closing argument at trial did not attempt to draw the logical leap the Government now attempts to hurdle on appeal—that is, that common sense proves drinking alcohol while concealing a weapon off base and off duty is unlawful. The missing piece of this logical chain is that the consumption of alcohol by Appellant while concealing his weapon is made unlawful by the North Carolina statute that the Government simply failed to offer into evidence. The Government could have easily done this by renewing its request for judicial notice at any point during trial, which it did not do. We cannot suspend reason on appeal to fix this apparent error, especially when a constitutional right of an Airman hangs in the balance.

Therefore, we find Appellant's conviction legally insufficient even when considering the evidence—and every reasonable inference therefrom—in a light most favorable to the Government. After careful consideration, we are convinced that no rational trier of fact could have convicted Appellant of unlawful concealed carry in this case because the Government did not prove the essential element of unlawfulness.

### b. Factual Sufficiency

Applying the standard for factual sufficiency, we also find that the evidence presented leaves us with significant questions unanswered related to whether Appellant's carrying of a concealed weapon was factually unlawful. Specifically, Appellant has asserted an error and made a sufficient showing in the deficiency of proof related to the essential element of unlawfulness.

After carefully weighing the evidence and giving appropriate deference to the fact that the trial court saw and heard the witnesses and evidence, we are clearly convinced the findings of guilty were against the weight of the evidence. We have decided the evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Harvey*, 2024 CAAF LEXIS 502, at *8. Again, evidence of Appellant's alcohol consumption contemporaneous with or prior to his concealed carry does not carry the burden to prove the element of unlawfulness beyond a reasonable doubt. Furthermore, we "must be clearly convinced of the correctness of this decision." *Id*. We are. Here we find that the evidence does not convince us of Appellant's guilt of the

charged offense of unlawful concealed carry. Therefore, we also find this offense factually insufficient.

## B. Communicating a Threat

Appellant argues that his conviction for communicating a threat is legally and factually insufficient because the Government did not prove all the charged language in the specification. Specifically, Appellant argues that the Government did not prove Appellant said "try me" or words to that effect, and without that language the threat was not complete. While we are persuaded by Appellant's claims that the words "try me" (or words of similar effect) were not uttered, we are still satisfied of the legal and factual sufficiency of Appellant's conviction for communicating a threat after modification of the specification.

### 1. Additional Background

At findings, Appellant was convicted of Specification 1 of Charge II, which read, "In that [Appellant], did, at or near Seven Springs, North Carolina, on or about 21 August 2022, wrongfully communicate to [JN] a threat to injure [JN] by stating 'try me' and 'are we going to do this,' or words to that effect, while displaying a weapon, to wit: a firearm."

In light of trial counsel's sentencing argument, and before trial defense counsel's sentencing argument, the military judge *sua sponte* announced special findings for Specification 1 of Charge II, communicating a threat. The military judge said:

> [T]he court found by proof beyond a reasonable doubt the following:
>
> . . . .
>
> Element 1, that on or about 21 August [20]22, at or near Seven Springs, North Carolina, the accused committed certain language, to wit: quote, "Try me" . . . and "Are we going to do this" . . . , or words to that effect, expressing a present determination or intent to injure the person, property, or reputation of [JN] presently or in the future;
>
> Two, that the communication was made known to [JN]; and,
>
> Three, that the communication was wrongful.
>
> . . . [And] a fourth element, which was, [the communication was made] "while displaying a weapon, to wit: a firearm."
>
> Multiple witnesses described the date in August [20]22 and sufficient location of the charged offense, North Carolina, so I won't detail that for purposes here.

21

The following facts support the court's conclusion that the elements have been met beyond a reasonable doubt:

[JN]'s in-court testimony, the accused says, "Do you think you could take me;" "What are you going to do about it;" [JN] responds with, "No, my girlfriend can kick your a[**]" or words to that effect. The accused lifts up the bottom of his shirt. [JN] sees the firearm. While displaying a firearm, the accused says to [JN], "Are we gonna do this or what" or "What are we doing? What are we going to do" or words to that effect.

[JN] says, "That's a cute little gun you have" or words to that effect. [JN] says to the accused, "What would you do if I pulled the chair out from underneath you?" That's when the accused stands up and cocks the weapon over [JN's] leg.

Picking up with that same moment, I turn to [JI's] in-court testimony. The sound of the firearm's upper assembly racking is distinctly heard by [SrA JI] at that moment. The distinct metal sound is paired with the accused's arm movement as observed by [SrA JI]. Just prior to the metal sound, the witness's attention was grabbed because he heard the accused say, "That's it" in a voice that was elevated higher than the comments that he'd heard leading up to that moment.

I also note Prosecution Exhibit 1 is [a video of] the accused at a table outside the door of [the bar] and displaying a firearm close in time to those events I just described. That provides additional corroboration to [JN] and [SrA JI]'s in-court testimony.

Aside from [JN]'s testimony, [AC], as well as [SrA JI], observed [JN] at that table with the accused while they were engaging in their back-and-forth banter and never saw [JN] encroach or move towards the accused.

Regarding the affirmative defense of self-defense in addition to the above findings, the court finds the accused is not entitled to the defense of self-defense under those circumstances in Charge II, Specification 2 [sic].

. . . .

Counsel, I just put that on the record just because of the articulation of the government counsel about the threat – about the accused chambering a round and then the threat. Essentially, the court found that evaluating the affirmative defense of self-

defense, that those events happened after the accused's threat that he was found guilty of.

Trial defense counsel then presented their sentencing argument.

**2. Law**

The tests for legal and factual sufficiency for this assignment of error are the same as articulated *supra,* and we apply that law de novo in our review of this separate assignment of error.

In Specification 1 of Charge II, Appellant was convicted of communicating a threat in violation of Article 115, UCMJ, which required the Government to prove the following three elements beyond a reasonable doubt: (1) that Appellant communicated certain language, to wit: "try me" and "are we going to do this," or words to that effect, expressing a present determination or intent to injure JN presently or in the future; (2) that the communication was made known to JN; and (3) that the communication was wrongful. *See MCM*, pt. IV, ¶ 53.b.(1). As charged, parties agreed the Government also had to prove the threat was communicated while displaying a weapon, to wit: a firearm.

For this offense, "threat"

> means an expressed present determination or intent to kill, injure, or intimidate a person or to damage or destroy certain property presently or in the future. The communication must be one that a reasonable person would understand as expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future. Proof that the accused intended to kill, injure, intimidate, damage, or destroy is not required.

*Id*. A communication is "wrongful" if the accused transmitted it "for the purpose of issuing a threat or with the knowledge that it would be viewed as a threat." *Id*. at ¶ 53.c.(2). A communication is not "wrongful" if it is made under circumstances that "reveal it to be in jest or for an innocent or legitimate purpose that contradicts the expressed intent to commit the act." *Id*.

The offense of communicating a threat has both an objective and a subjective standard. *Harrington*, 83 M.J. at 414. Whether the words spoken were "threatening" is judged from the objective perspective from the viewpoint of a "reasonable person in the recipient's place." *Id*. (emphasis and citation omitted). The wrongfulness element is viewed from the subjective perspective of the speaker. *Id*. (citation omitted). In assessing the wrongfulness of the speaker's intent, "the surrounding circumstances may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter." *United States v. Gilluly*, 32 C.M.R. 458, 461 (C.M.A. 1963) (citation omitted). "A statement

made under such circumstances . . . is not wrongful." *MCM*, pt. IV, ¶ 53.c.(2). In reviewing communicating a threat cases, context matters and words should not be considered in a vacuum. *United States v. Brown*, 65 M.J. 227, 231 (C.A.A.F. 2007) ("Context gives meaning to literal statements.").

"[S]o long as the factfinder entered a general verdict of guilty to the 'on divers occasions' specification without exception, any one of the individual acts may be affirmed by the CCA as part of its Article 66, UCMJ, review." *United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008). Our superior court further noted:

> The longstanding common law rule is that when the factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged. The rule is based on the presumption that the verdict attaches to each of the several alternative theories charged. Because the verdict attaches to all theories, the verdict may stand despite trial errors "if any one of the counts is good and warrants the judgment."

*Id*. (quoting *Griffin v. United States*, 502 U.S. 46, 49 (1991)) (additional citations omitted).

This court "adopt[ed] the standards applied to the appellate review of special findings under Fed. R. Crim. P. 23(c) when we evaluate, on appeal, a military judge's special findings made pursuant to R.C.M. 918(b)." *United States v. Vazquez*, No. ACM 37647, 2013 CCA LEXIS 207, at *10 (A.F. Ct. Crim. App. 1 Mar. 2013) (unpub. op.) (citing *United States v. Truss*, 70 M.J. 545, 547 (A. Ct. Crim. App. 2011)). "Under that federal rule, special findings on the ultimate issue of guilt or innocence are subject to the same appellate review as a general finding of guilt . . . ." *Id*. (citations omitted).

**3. Analysis**

We review Appellant's remaining conviction in this case as found by the military judge in his special findings. The military judge's special findings here cover pure questions of fact which pertain to the ultimate issue of guilt. Thus, we will review the military judge's special findings of guilty de novo. *See, e.g., Truss*, 70 M.J. at 547–48.

There are facts in the record to support a finding that Appellant said some, but not all, of the charged threatening language. The military judge found as fact, *inter alia*, that Appellant said during the escalating verbal altercation, "What are you going to do about it?" At some point during the argument, JN said, "No, my girlfriend can kick your a[**]," or words to that effect. In response to this offer to fight JN's girlfriend, Appellant lifted the bottom of his shirt exposing his firearm. The military judge found as fact Appellant, while

displaying his firearm, said to JN "Are we gonna do this or what," or "What are we doing? What are we going to do," or words to that effect. The record supports these findings, and Appellant alleges no error in those findings. The military judge made clear this language was the threat of which Appellant was convicted. Appellant is correct the record does not support a finding, nor did the military judge make a finding, that Appellant also said the words, "try me" when making this threat. We are not persuaded by the Government's attempts to save the charge as drafted by explaining how other phrases uttered by Appellant were similar enough to the other charged words "try me." Those words did not bear out in the evidence, and we decline to stretch the reality to say they did. We also find that none of the other phrases uttered by Appellant while displaying his firearm have the same or effect as the phrase "try me."

However, we find that, on their own, the remaining words charged by the Government, that is, "are we going to do this," in the context of this case, are legally and factually sufficient to constitutive a threat and do not require the other charged language "try me" to pass muster. Therefore, the words "try me" were not essential to the charge, element, or gravamen of the offense, and their exception from the specification does not change the nature of the threat or the circumstances of the offense. Again, there is an important distinction between an element of a crime and a method of committing the crime. *See United States v. Gifford*, NMCCA 201200169, 2013 CCA LEXIS 97, at *13 (N.M. Ct. Crim. App. 14 Feb. 2013) (unpub. op.) (citation omitted). The other changed language met the essential elements of the offense, and the change in the total number of instances that threatening language was used is not fatal to the charge. We are reminded that a "verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Rodriguez*, 66 M.J. at 204 (citation omitted).

We now turn to the remaining elements of wrongfully communicating a threat and our legal and factual sufficiently review. Our review of the record leaves us confident that the evidence presented at trial established Appellant's guilt beyond a reasonable doubt for wrongfully saying, "are we going to do this," or words to that effect, to JN while displaying his handgun. Because Appellant directed that threatening communication towards JN, we find that an objective observer in JN's place would have perceived Appellant's words and body language as a threat to, at worst, shoot him or, at best, engage in a fight where Appellant was armed with a deadly weapon. We also conclude that, under the totality of the circumstances, Appellant intended his communication to be perceived by JN as a threat, or, at a minimum, knew that JN would perceive his threat as sincere. In context, Appellant's words and actions were escalating and clearly threatening in nature. Rather than continuing the verbal argument or walking away, Appellant made an unambiguous threat to injure JN with his weapon. We find the threat credible because it was made in the context of

the of an increasingly aggressive exchange that devolved into personal insults about who could "kick [Appellant's] a[**]."

We affirm the conviction for the words, "are we going to do this," but not the language "'try me' and." Specifically, the court affirms only so much of the finding of guilty of Specification I of Charge II as finds that:

> In that [Appellant], did, at or near Seven Springs, North Carolina, on or about 21 August 2022, wrongfully communicate to [JN] a threat to injure [JN] by stating "are we going to do this", or words to that effect, while displaying a weapon, to wit: a firearm.

Therefore, as modified, we find Appellants conviction for communicating a threat legally and factually sufficient. As to legal sufficiency, we find that after viewing the evidence in the light most favorable to the Prosecution and drawing all reasonable inferences, any rational trier of fact could have found the essential elements of the modified offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98 (citation omitted). As to factual sufficiency, we do not find that Appellant has made a sufficient showing of deficit of proof for the modified offense, but even if he had, we are clearly convinced the weight of the evidence proved his guilt to the modified offense beyond a reasonable doubt.

## C. Sentence reassessment

Having set aside the finding of guilty to unlawfully carrying a concealed weapon and affirming Specification 1 of Charge II, communicating a threat, as modified, we must evaluate whether we should reassess the sentence or return this case for a sentence rehearing. We conclude we can reassess the sentence and do so below.

### 1. Additional Background

The military judge sentenced Appellant as follows: "To be reprimanded. To be reduced to the grade of E-1. For Charge I, Specification:  To be confined for seven days. For Charge II,[25] Specification 1: To be confined for a period of 31 days. Confinement shall run concurrently." The convening authority provided the language for the reprimand, to include, "You demonstrated the utmost disregard when you *unlawfully carried a concealed weapon and* threatened another Airman while displaying that weapon." (Emphasis added).

### 2. Law

To reassess a sentence, a CCA must be able to reliably ascertain "what sentence would have been imposed at the trial level if the error had not occurred."

---

[25] Appellant was acquitted of Specification 2 of Charge II.

*United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986) (citations omitted). The CCA must also be able to determine that absent the error the "sentence would have been at least of a certain magnitude." *Id*. We may affirm only as much of a sentence as we find correct in law and fact. Article 66(b), UCMJ, 10 U.S.C. § 866(b). When conducting our review, we consider not only the appropriateness of the entire sentence, but also "the appropriateness of each segment of a segmented sentence." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

CAAF has set forth a list of non-exhaustive factors that CCAs may consider in determining whether to reassess a sentence or permit a rehearing, including: (1) whether there are "[d]ramatic changes in the penalty landscape or exposure;" (2) whether the appellant was sentenced by members or by military judge alone; (3) whether the "remaining offenses capture the gravamen of criminal conduct included within the original offenses;" and (4) "[w]hether the remaining offenses are of the type that judges of the [CCAs] should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted). We have broad discretion first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *Id*. at 15. If we cannot determine that the sentence would have been at least of a certain magnitude, we must order a rehearing. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted).

### 3. Analysis

#### a. Changes in the Penalty Landscape or Exposure

Here, two changes were made to Appellant's conviction. First, as to the remaining communicating a threat conviction, we set aside the language "try me" and leave the threat "are we going to do this" while showing a handgun. This first change has no impact on the penalty landscape for this offense. Appellant had the same punitive exposure whether he was convicted of some or all the charged language under the specification. This factor favors sentence reassessment as opposed to a rehearing. The second change made to Appellant's conviction was setting aside the offense of unlawful concealed carry, which removes that penalty altogether. However, as we discuss below, this is not fatal to our determination that we can reassess.

#### b. Gravamen of Criminal Conduct

With respect to the main gravamen of the criminal conduct, the landscape has changed in so much as the concealed carry offense has been removed. However, the military judge used segmented sentences, and it is clear from his sentence that the gravamen offense remains—the threat communicated. Put another way, the military judge sentenced Appellant to over four times the confinement for communicating a threat as compared to the concealed carry

violation. Thus, we know the more serious offense remains substantively the same. Again, the removal of the words "try me" did not change the gravamen of the conduct for the remaining offense. This factor weighs in favor of reassessing.

### c. Sentencing Forum

We next note that Appellant was sentenced by a military judge sitting alone. Judges of the CCAs "are more likely to be certain of what a military judge would have done as opposed to members." *Winckelmann*, 73 M.J. at 16. Here we also know that the military judge sentenced Appellant to 7 days of confinement for unlawfully carrying a concealed weapon, and to 31 days confinement for communicating a threat. This factor also weighs in favor of reassessment.

### d. CCA Familiarity with Remaining Offense

Finally, appellate judges are generally familiar with the offense of communicating a threat. *See id.* at 15–16. There is nothing particularly unique or unusual about this case, and the same evidence was relevant to the sentence adjudged regardless of whether Appellant's threat included the words "try me." For example, the evidence that Appellant carried a concealed handgun he chose to show JN while verbally threatening him would have come in given the way this threat was charged. Thus, this factor also weighs in favor of reassessment.

### e. Conclusion

After weighing all the factors, we find that reassessment is appropriate in this case. We further find that considering all the evidence admitted, we can reliably determine the sentence that would have been imposed. As discussed above, this court has extensive experience in dealing with the offenses in this case and, as such, is cognizant of the types of punishment and levels of sentence imposed for offenses like those of which Appellant was convicted. These considerations along with the remaining circumstances surrounding this case establish that a rehearing on sentence is unnecessary.

We find that Appellant would have received the same amount of confinement for the modified threat, which was 31 days. The fact that the military judge sentenced Appellant to the higher amount of confinement for the communicating a threat offense indicates that he viewed this offense as relatively more severe as compared to the offense of unlawful concealed carry. Further, since the sentence to confinement for unlawful concealed carry was to run concurrently with the sentence for communicating a threat, no modification for the confinement is necessary.

With the sentence to confinement left unmodified, we assess that the military judge would have adjudged at least a two-grade reduction for the offense of communicating a threat. After carefully considering this particular Appellant, the nature and seriousness of his remaining offense, his record of service, and all matters contained in the record, we find Appellant's remaining sentence requires some relief. Appellant's grade reduction from E-4 to E-1 is unduly severe in the context of the remaining conviction. Therefore, we approve reduction to the grade of E-2 rather than E-1. Also, given our findings with respect to the unlawful concealed carry specification, the reprimand as written is no longer appropriate.

Given the restoration of Appellant's grade to E-2, only so much of the sentence as provides for confinement for 31 days and reduction to the grade of E-2 is affirmed. All rights, privileges, and property of which Appellant has been deprived by virtue of that portion of his sentence which has been reassessed by this decision are ordered restored.

## D. Timely Appellate Review

### 1. Law

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed, and a decision is not rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four *Barker* factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Moreno*, 63 M.J at 142. With respect to the fourth factor, *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id*. at 138–39 (citations omitted). In the absence of prejudice as identified in *Moreno*, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

"[A] Court of Criminal Appeals has authority under Article 66[, UCMJ, 10 U.S.C. § 866,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C.

§ 859(a)], if it deems relief appropriate under the circumstances." *Tardif*, 57 M.J. at 224 (citation omitted).

The following factors are to be considered to determine if relief under *Tardif* is appropriate:

> 1. How long did the delay exceed the standards set forth in [*Moreno*]?

> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

*United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015) (citations omitted), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In our consideration of the above factors, "no single factor [is] dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate." *Id.* (footnote omitted).

**2. Analysis**

Appellant's case was docketed with the court on 27 June 2023. The delay in rendering this decision after 27 December 2024 is considered presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 16 July 2024 after ten requests for enlargements of time, which this court granted; the time required for the Government to file its answer on 15 August 2024; and the time for Appellant to file his reply brief on 22 August 2024. Further, on 22 August 2024, Appellant made a request for an oral argument, which was granted and held on 21 October 2024. Appellant has made no specific claim of prejudice for this issue, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, there is no due process violation.

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), or *Tardif* in the absence of a due process violation. *See Gay*, 74 M.J. at 744. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, authority to grant relief for the delay in completing appellate review.

## III. CONCLUSION

The findings of guilty as to the Specification of Charge I and Charge I are **SET ASIDE and DISMISSED WITH PREJUDICE**. The finding of guilty as to Specification 1 of Charge II is affirmed except the words, "'try me' and." The finding as to the excepted words is **SET ASIDE and DISMISSED WITH PREJUDICE**. We affirm the findings to Specification 1 of Charge II, as modified, and Charge II. We affirm only so much of the sentence as provides for confinement for 31 days, and reduction to the grade of E-2. The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no further error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and the sentence, as reassessed, are **AF-FIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court